Steven J. German - State Bar No. 014789
Scott B. Seymann – State Bar No. 027215
**ADELMAN GERMAN, P.LC.**
8245 North 85th Way
Scottsdale, Arizona 85258
Telephone (480) 607-9166
Facsimile (480) 607-9031
steve@adelmangerman.com

Steven C. Dawson - State Bar #006674
Anita Rosenthal – State Bar # 006199
Sander R. Dawson – State Bar #032243
**DAWSON & ROSENTHAL, P.C.**
25 Schnebly Hill Road
Sedona, Arizona 86336-4233
Telephone: (928) 282-3111
Facsimile: (928) 282-3126
dandr@dawsonandrosenthal.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| BENJAMIN McCLURE, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>COUNTRY LIFE INSURANCE COMPANY, dba COUNTRY FINANCIAL, previously doing business as COUNTRY COMPANIES; CC SERVICES, INC. dba COUNTRY FINANCIAL; DOES 1-10; ROES 1-10.<br><br>        Defendants. | **NO.** CV-15-2597-PHX-DLR<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>**Breach of Contract; Insurance Bad Faith**<br><br>**JURY TRIAL DEMAND** |

1

Plaintiff Benjamin McClure alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Benjamin McClure (hereinafter "McClure" or "Plaintiff") is a resident of Maricopa County, residing in Peoria, Arizona. McClure was an Arizona resident at all relevant times herein.

2.     Defendant Country Life Insurance Company dba Country Financial, at the time of the issuance of the subject policy, was doing business as Country Companies, ("COUNTRY"). COUNTRY is an insurance company with its principal place of business in Bloomington, Illinois.

3.     At all times relevant Defendant COUNTRY was duly licensed to sell individual disability insurance in the State of Arizona and engaged in the business of issuing policies of insurance to Arizona residents. Defendant COUNTRY caused acts to occur in Arizona out of which this Complaint arises and is therefore subject to Arizona's insurance laws, statutes, and regulations.

4.     Upon information and belief, Defendant CC Services, Inc., ("CC SERVICES") is a foreign corporation with its principal place of business in Bloomington, Illinois.

5.     Upon information and belief, Defendant CC Services is engaged in the business of evaluating, adjusting, administering, overseeing, and handling individual disability income claims made by COUNTRY insureds, including those in the State of Arizona. Defendant CC Services caused acts to occur in Arizona out of which this Complaint arises and is therefore subject to Arizona's insurance laws, statutes, and

regulations pertaining to claim handling practices and duties of good faith and fair dealing.

6.      Upon information and belief, CC Services and its employees were at all times relevant, the actual (or ostensible) agents of Defendant COUNTRY, and acting within the scope of its employment or agency. Defendants CC Services and COUNTRY acted in concert and are jointly and severally liable for the acts complained of herein. CC Services' employees acted for and on behalf of Defendant COUNTRY as lent employees and/or served both Defendants as employees of both Defendants.

7.      Defendants Does 1-10 and Roes 1-10 are fictitiously identified Defendants who, upon information and belief, committed wrongful acts that caused or contributed to Plaintiff's injuries, damages, and claim. When the true identity of these Defendants is known, leave of this Court will be sought to amend this Complaint accordingly. Upon information and belief, some of the Doe and Roe Defendants are and were at all times relevant herein employees, servants, and actual (or ostensible) agents of other Defendants, and acting within the scope of their employment or agency.

8.      Jurisdiction and venue are appropriate in this Court.

**GENERAL ALLEGATIONS**

9.      Plaintiff re-alleges the allegations above as though fully restated herein.

10.     On or about November 7, 1995, Defendant COUNTRY sold and then issued an Individual Disability Income Policy (Policy No: H373449) (hereinafter, the "Policy") to the Plaintiff. The Policy provides a monthly individual disability income

benefit (and other benefits) in the event Plaintiff became disabled under the terms of the Policy.

11.     Plaintiff satisfied and performed all terms and conditions required of him under the Policy. He has timely paid monthly premiums throughout the Policy's existence, and the Policy has otherwise been in effect at all relevant times.

12.     The Policy provided a total monthly benefit of no less than $1,500.00 upon proof of disability.

13.     The Policy defines "disability" as a:

> [c]ontinuous inability to perform substantially all important duties of your regular occupation because of your injury or sickness. After benefits have been paid for two years, it means continuous inability to engage in any occupation because of your injury or sickness.

14.     The Policy defines Regular Occupation as, "your occupation at the time disability begins."

15.     The Policy defines Any Occupation as, "any occupation in which you could be expected to engage. Consideration is given to your education and training or experience."

16.     At all times relevant hereto, Plaintiff's regular occupation was that of a Manager of the Contact Call Center for Progressive Insurance. His duties included managing over 100 call center employees and supervisors.

17.     On November 26, 2012 Plaintiff suffered a traumatic brain injury with post-concussive syndrome when he accidentally walked into a pole, striking his head. Ever since that incident Plaintiff suffers from memory loss, intermittent seizures,

headaches, vertigo, confusion, fatigue, difficulty focusing, and an inability to multi-task, among many other symptoms.

18.     As a result of plaintiff's injury, and since November 26, 2012, Plaintiff has been periodically hospitalized, and requires ongoing medical care and therapy. He has restrictions that include an inability to drive, requires assistance with activities of daily living, and suffers from attendant medical conditions and symptoms, making him unable to engage in his regular or any other occupation for which he is reasonably trained, educated, or experienced.

19.     As a result of the brain injury suffered on November 26, 2012, Plaintiff has been unable to perform substantially all important duties of his regular occupation and is unable to and has not continuously engaged in any occupation.

20.     Plaintiff timely submitted a claim for benefits under the Policy, and in January 2013, Defendants COUNTRY and CC Services opened a claim and sometime later began paying Plaintiff a monthly disability benefit of $1,500.00.

21.     The Policy calls for a waiting period of 90-days from the date of disability, and thereafter insurance premiums are waived while the insured remains disabled.

22.     On September 26, 2013 Defendants notified Plaintiff of the waiver of premium benefit and refunded premium payments Defendants collected from the Plaintiff during the waiver period.

23.     While paying monthly benefits, Defendants gathered and are in possession of Plaintiff's medical records as well as certifications of disability from Plaintiff's treating physicians, which more fully describe the conditions that

permanently restrict and limit Plaintiff from practicing both his "regular" and "any" occupation.

24.     On December 17, 2013, and over a year after Plaintiff was first injured, Defendants notified Plaintiff that their review of medical correspondence from Plaintiff's treating physicians did not support disability from a physical standpoint of performing the job duties of an Insurance Manager and requested a neuropsychological evaluation and additional medical information.

25.     On February 10, 2014 Plaintiff underwent a neuropsychological evaluation and testing.

26.     On April 21, 2014 Defendants issued their final monthly disability benefit payment to Plaintiff in the amount of $1,500.00.

27.     On April 23, 2014, Defendants wrote to Plaintiff and advised that they were denying his claim on the basis that the medical information did not show physical or cognitive impairments resulting from his injury that would be expected to prevent him from performing the duties of his regular occupation.

28.     Plaintiff has not been able to return to his regular occupation or any occupation as a result of the brain injury he suffered on November 26, 2012. He has restrictions and limitations that prevent him from working and is "totally disabled" as defined by the Policy.

29.     Defendants COUNTRY and CC Services undertook an outcome based investigation designed to lead to the denial of Plaintiff's claim.

30.     Defendants COUNTRY and CC Services again refused to pay benefits owed under Plaintiff's Policy after Plaintiff notified Defendants months later that he was hospitalized and had undergone significant medical treatment and care for his brain injury since Defendants' April 2014 claim denial.

31.     Defendants did not request medical records, did not perform a follow-up investigation, and otherwise repeatedly failed to fairly and objectively evaluate medical information and other evidence (a) at the time it first denied the claim and (b) thereafter when Plaintiff reported he remained disabled, had not returned to work, was hospitalized, and underwent significant care and treatment over a year following Defendants' denial of his claim.

32.     Plaintiff continues to suffer financial distress and damage to his credit reputation, emotional, mental, and physical harm, and other injuries and damages as a direct and proximate result of Defendants' wrongful refusal to pay benefits owed per the Policy, and as a result of its violations of other Arizona's statutes, regulations and case law defining standards for claim handling processes and procedures.

33.     Plaintiff was forced to retain the services of an attorney to seek and secure benefits under the Policy that are wrongfully being withheld by Defendants, while Defendants continue to wrongfully collect premiums that would have been waived had Plaintiff's claim been honored.

34.     Plaintiff is making a claim for recovery of reasonable attorneys' fees per A.R.S. §12-341.01, and the costs he is forced to incur herein, along with pre-and post-judgment interest at the legal rate.

7

35.     The amount in monthly disability benefits Defendants owe, and will continue to owe in the future, is "liquidated" to the extent it can be readily calculated and has in the past been formally demanded. Therefore, Plaintiff is entitled to pre-judgment interest on monies wrongfully withheld.

36.     Defendants acted and continue to act with an "evil mind," and with a conscious disregard of the rights and entitlements of Plaintiff to such an extent and in such a fashion so as to justify the imposition of punitive and exemplary damages. These damages, along with other contractual and extra-contractual damages, are expressly sought to punish Defendants and to deter other insurance companies from the same or similar bad faith claims handling practices.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

37.     Plaintiff re-alleges the above allegations as though fully set forth herein.

38.     Defendants breached Plaintiff's insurance policy by refusing to pay monthly individual disability income benefits legitimately owed per the Policy beginning in April 2014 and continuing into the future.

39.     Defendants also breached Plaintiff's Policy by refusing to waive insurance premiums per the Policy while Plaintiff remains disabled.

40.     Defendants breached their contract by charging, accepting, and holding onto insurance premiums paid by Plaintiff (and the interest earned on those premiums), which should have been waived per the Policy's terms.

41.    Plaintiff remains "totally disabled" as defined under the Policy, and is owed "total disability" and other benefits under the Policy.

42.    Defendants continue to breach their promises and the terms of the Policy by refusing to pay disability insurance benefits owed Plaintiff because of his ongoing disability.

43.    Defendants owes Plaintiff individual disability income benefits of no less than $1,500 per month plus interest on those benefits beginning in April 2014 and continuing until the jury renders a verdict in this case, and into the future.

44.    As a result of Defendants' contractual breaches and their its bad faith conduct as more fully described herein, Plaintiff is entitled to an acceleration of all future benefits owed under the Policy.

45.    As a direct and proximate result of the Defendants' breaches, Plaintiff has incurred damages in a sum total to be proved at the time of trial, but which are liquidated and now owed.

46.    This matter arises out of contract (the Policy), and the Plaintiff is entitled to reasonable costs and attorneys' fees pursuant to A.R.S. §12-341 and §12-341.01, as well as pre-and post-judgment interest.

47.    Plaintiff is also entitled to recover attorneys' fees, costs and out of pocket expenses he incurs to recover insurance benefits that the Defendants owe, as a separate component of his economic damages.

## SECOND CLAIM FOR RELIEF

### (Insurance Bad Faith - Breach of Covenants of Good Faith and Fair Dealing)

48.     Plaintiff re-alleges the above allegations as though fully stated herein.

49.     Defendants owe Plaintiff duties of good faith and fair dealing as part of the handling of Plaintiff's claim under the Policy.

50.     The duties Defendants owe to Plaintiff include but are not limited to a prompt, thorough and fair handling of his claim, and payment of benefits without unreasonable delay. Defendants are required to give equal considerations to Plaintiff and cannot place their own interests ahead of those of Mr. McClure.

51.     Defendants have breached and continue to breach duties of good faith and fair dealing owed to the Plaintiff.

52.     Defendants wrongfully, and in violation of the above described duties of good faith and fair dealing, withheld, delayed, denied, and continue to deny and withhold Plaintiff disability insurance benefits owed under the Policy.

53.      Defendants failed to conduct a reasonable investigation into Plaintiff's claim, and instead engaged in an outcome based investigation designed to lead to the denial of Plaintiff's claim.

54.     Defendants failed to reasonably and fairly investigate Plaintiff's claim, failed to take reasonable measures to ensure prompt payment of Plaintiff's claim, and deliberately conducted a biased investigation for the wrongful and purposeful intent to avoid paying Plaintiff benefits owed under his Policy.

55.     Defendants repeatedly failed to fairly and objectively evaluate medical information and other evidence, and ignored information in medical records that clearly supported Plaintiff's claim for disability.

56.     Defendants violated and continue to violate duties of good faith and fair dealing owed to Plaintiff by (1) relying on non-treating, non-examining medical professionals who are biased and do not qualify to render medical opinions regarding Plaintiff McClure's claim, by (2) relying on non-treating and non-examining personnel who have not considered the totality of Plaintiff's medical records and conditions, and (3) have and continue to act unreasonably by denying Plaintiff McClure's claim without medical foundation to do so.

57.     Defendants failed to conduct an investigation into Plaintiff's claim when requested to do so in 2014 and 2015, and failed and continues to fail to provide any reasonable or legitimate explanation for its claims decisions.

58.     Defendants unreasonably interpreted the Policy's provisions to their advantage disregarding the interests of the Plaintiff.

59.     Defendants unreasonably interpreted Arizona statutes, laws, and regulations applicable to the Policy's provisions.

60.     Defendants purposefully intended to injure Plaintiff and/or acted to serve their own interests, having reason to know and consciously disregarding the substantial risk that their ~~its~~ conduct would significantly injure Plaintiff financially, emotionally, mentally, and physically; and, would cause anger, frustration, emotional, mental, and physical pain and suffering, among other things. Defendants are liable

for exemplary damages for the conduct described herein as punishment, and as a deterrent so that Defendants and others do not act the same way in the future.

61.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered and will continue to suffer significant damages and injuries that have affected and will continue to affect his life.

62.    Defendants' refusal to pay past individual disability income insurance benefits, and their refusal to pay disability benefits currently owed and those that will be owed in the future, has directly and proximately caused special and compensatory damages, and has created a significant foundation for exemplary and punitive damages, in an amount to be proved at trial.

63.    Plaintiff is owed past and current disability benefits under the Policy, as well as an acceleration of future benefits as a direct and proximate result of Defendants' tortious conduct and bad faith refusal to honor the Policy and/or to fairly, timely and/or thoroughly investigate the Plaintiff's accident related disability claim.

64.    As a further direct and proximate result of Defendants' misconduct, Plaintiff has suffered and will continue to suffer, anxiety, worry, frustration, mental, psychological and emotional distress, physical distress, loss of stability (financial and emotional), loss of earnings, and physical pain, all in amounts to be proved at trial.

65.    As a further direct and proximate result of Defendants' misconduct, the Plaintiff incurred and will continue to incur other special damages in amounts to be proved at trial.

66.    As a further proximate result of Defendants' conduct, Plaintiff has incurred other losses, lost opportunities, and suffered a decrease in the enjoyment and quality of his life (i.e., hedonic losses), all in amounts to be proved at trial.

67.    At all times herein, Defendants were acting in concert and in furtherance of a joint enterprise and are therefore jointly and severally liable for the damages and harm inflicted on the Plaintiff.

**WHEREFORE**, Plaintiff requests a trial by Jury, and seeks damages against Defendants jointly and severally, as follows:

    a. Contractual damages for disability benefits owed under the Policy, and a refund of premiums Plaintiff paid while disabled under the Policy;

    b. Damages for failure to pay "total disability" benefits (past, ongoing, and accelerated future benefits) under the applicable coverage, together with a refund of premiums, in amounts to be determined at trial;

    c. Compensatory damages (past and future) for: mental, psychological and emotional damages; physical distress and injury; pain and suffering, loss of enjoyment of life, damage to credit reputation, and other damages in an amount to be determined at trial;

    d. An assessment of punitive and exemplary damages in an amount determined at trial to punish, deter and set examples of Defendants;

    e. Pre-and post-judgment interest based on the liquidated amounts owed to Plaintiff, including disability benefits owed and a refund of premiums that Defendants have wrongfully collected from Plaintiff;

f.  An award of future disability benefits from the date of the jury's verdict until the maximum benefit period under the Policy;

g.  Reasonable attorneys' fees pursuant to A.R.S. Section 12-341.01;

h.  All litigation costs incurred; and

i.  For whatever other relief the Court deems proper.

### **TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure 38(b) Plaintiff has demanded a trial by jury.

Dated this 8th day of July, 2016.

**ADELMAN GERMAN, P.L.C.**
**DAWSON & ROSENTHAL, P.C.**


By:  *Steven J. German*
Steven J. German
Scott B. Seymann
8245 North 85th Way
Scottsdale, Arizona 85258

*Attorneys for Plaintiff*

14