WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Benjamin McClure, | No. CV-15-02597-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Country Life Insurance Company, et al., | |
| Defendants. | |

Plaintiff Benjamin McClure purchased a disability insurance policy from Defendant Country Life Insurance Company ("Country Life") in 1995. In January 2013, McClure submitted a claim for benefits after suffering a traumatic brain injury. McClure alleges that Country Life and Defendant CC Services, Inc. ("CCS"), an affiliated company providing various services to Country Life, breached the insurance contract and administered his claim in bad faith.

At issue is CCS's motion for summary judgment, which is fully briefed. (Docs. 201, 231, 262.) CCS argues that it cannot be liable for breach of contract or bad faith claim administration as a matter of law because it is not a party to the insurance contract and is not a partner, principal, or agent of County Life. For the following reasons, the motion is denied.[1]

---

[1] CCS's request for oral argument is denied because the issues are adequately briefed and oral argument will not assist the Court in resolving the pending motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

## I. Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Facts are material if they might affect the outcome of the case under governing law, and a dispute over those facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II. Local Rule of Civil Procedure 56.1

Preliminarily, CCS objects to numerous paragraphs in McClure's controverting statement of facts on grounds that they violate Local Rule of Civil Procedure 56.1. This District's Local Rules of Practice impose specific requirements on the form and content of summary judgment motions. As relevant here, "[a]ny party filing a motion for summary judgment must file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion." LRCiv 56.1(a). Each of these facts "must refer to a specific admissible portion of the record where the fact finds support (for example, affidavit, deposition, discovery response, etc.)." *Id.* Likewise:

> Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.

LRCiv 56.1(b).

The rule distinguishes between a separate statement of facts and a memorandum of law because the two documents serve different purposes. The court should be able to glean which facts, if any, are genuinely disputed by reviewing the parties' separate and controverting statements of facts. Working from that baseline of facts, the court then looks to the parties' memoranda of law to determine whether any genuinely disputed matters are material under governing law, or whether the movant is entitled to judgment as a matter of law. Thus, factual disputes should be aired in the parties' separate statements, while legal disputes should be addressed in their memoranda of law. The court may deem a movant's separate statement of facts to be true if the non-moving party does not comply with these rules. *See Szaley v. Pima Cty.*, 371 Fed. App'x, 734, 735 (9th Cir. 2010).

CCS correctly notes that many paragraphs in McClure's controverting statement of facts do not comply with Rule 56.1(b) because they contain legal arguments over the significance or effect of facts, rather than disputes over the factual matter itself. (Doc. 262 at 3-4; Doc. 232 ¶¶ 2, 16-19, 21.)

> The Rule requires the controverting party to provide a specific record reference supporting the party's position if a fact is disputed; it does not permit explanation and argument supporting the party's position to be included in the response to the moving party's statement of facts. Argument may be made in the response or reply brief on the motion for summary judgment, but within the page limits.

*Pruett v. Arizona*, 606 F. Supp. 2d 1065, 1075 (D. Ariz. 2009). CCS's objections are well-taken and, for purposes of this order, the Court "will disregard each of those paragraphs except for the word 'controverted' and the references to the record." *Id.*

CCS also objects to several paragraphs that include additional facts "for completeness," instead of listing these facts as separate statements as required under Rule 56.1(b)(2). (Doc. 262 at 3-4; Doc. 232 ¶¶ 9-11, 15, 20.) Although the Court agrees that these paragraphs do not strictly adhere to the Rule 56.1(b), the Court nonetheless will consider the facts (but not the arguments) included to the extent they are supported by

citations to admissible portions of the record.

Lastly, CCS objects to paragraph 20 of McClure's controverting statement of facts because it does not cite to any portion of the record for evidentiary support. (Doc. 262 at 4; Doc. 232 ¶ 20.) CCS's objection is sustained. Paragraph 20 of McClure's separate statement contains no reference to the record and, instead, advances legal arguments more appropriately made in the response memorandum. The Court therefore will not consider it for purposes of this order.

**III. Discussion**

The facts relevant to CCS's motion largely are undisputed. CCS and Country Life are two among many affiliated companies operating under the tradename "COUNTRY Financial." They share corporate officers and a majority shareholder, and correspond under the same COUNTRY Financial tradename and logo. Pursuant to an intercompany servicing agreement, CCS agreed to provide Country Life and other COUNTRY Financial affiliates "with services necessary to operate their business," including accounting, actuarial, billings, claims, finance, human resources, information technology, marketing, management, policy administration, and underwriting. CCS describes itself as "sort of the payroll entity" for COUNTRY Financial affiliates. Employees at the affiliates, including those who handled McClure's claim, technically are CCS employees because CCS provides payroll, benefits, and other human resources services for them. This arrangement allows employees to easily transition from one affiliate to another. The servicing agreement, however, explicitly denies the creation of "any partnership, joint venture, employment, principal-agent or other relationship" between CCS and the other COUNTRY Financial affiliates.

McClure purchased his insurance policy from Country Life. CCS was not a signatory to that contract and is not mentioned in it. Based on these undisputed facts, CCS argues that it cannot be liable for breaching the insurance contract or the covenant of good faith inherent in it. McClure, however, contends that a jury reasonably could find CCS jointly and severally liable based of its own direct involvement in the

administration of his claim, and under alter-ego or joint venture theories. The Court agrees with McClure, in part.

### A. Alter Ego Liability

First, the Court doubts that alter-ego liability is implicated by the relationship between CCS and Country Life. Arizona law "allows a parent corporation to be held liable for the acts of its subsidiary when the individuality or separateness of the subsidiary has ceased[.]" *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991). This case, however, does not involve a parent company and its subsidiary. There is no evidence that CCS is Country Life's parent company, or vice versa. Rather, the undisputed evidence is that CCS and Country Life are two among many affiliated companies all operating under the shared tradename.

Regardless, the undisputed evidence does not support McClure's alter-ego theory. To prevail on an alter-ego liability theory, a plaintiff "must prove both (1) unity of control and (2) that the observance of the corporate form would sanction a fraud or promote injustice." *Id.* Although the evidence would permit a reasonable jury to find for McClure as to the first element, unity of control, he has not made a sufficient showing on the second prong. The Court is not confronted here with an insurer attempting to evade liability for the actions of a third-party administrator's employees. Country Life readily admits that it is McClure's insurer and is bound by the insurance contract. Country Life also acknowledges that the CCS employees assigned to it are its agents, and therefore Country Life is responsible for the actions of those employees even though, on paper, they are employees of CCS. Country Life is not hiding behind CCS's operational services to avoid potential contractual or bad faith liability. Under the circumstances, the Court concludes that observance of the corporate form would not sanction fraud or promote injustice.

### B. Joint Venture

McClure alternatively argues that a jury reasonably could find CCS jointly and severally liable for breach of contract and bad faith claim administration because it

engaged in a joint venture with Country Life. The Court agrees.

Under Arizona law, privity of contract generally must exist before a party may be held liable for breaching it. *See Goodman v. Physical Res. Eng'g, Inc.*, 270 P.3d 852, 857 (Ariz. Ct. App. 2011.) Likewise, because an insurer's duty to act in good faith is inherent in every insurance contract and is non-delegable, an insured generally cannot bring bad faith claims against an entity not privy to the contract because the non-contracting party owes no duty of good faith. *Ingram v. Great Am. Ins. Co.*, 112 F. Supp. 3d 934, 940-41 (D. Ariz. 2015) (citing *Walter v. Simmons*, 818 P.2d 214, 223 (Ariz. Ct. App. 1991)). Arizona recognizes an exception to these general rules, however, when an "insurer and its agent are engaged in a joint venture." *Farr v. Transamerica Occidental Life Ins. Co.*, 699 P.2d 376, 386 (Ariz. Ct. App. 1984).

"A joint venture . . . is a special relationship between two or more parties to engage in and carry out a single business venture for joint profit without any actual partnership or corporate designation." *Helfenbein v. Barae Inv. Co., Inc.*, 508 P.2d 101, 104 (Ariz. 1973). "The elements of a business joint venture generally include: (1) an agreement; (2) a common purpose; (3) a community of interest; (4) an equal right of control; and (5) participation in profits and losses." *Estate of Hernandez v. Flavio*, 930 P.2d 1309, 1312 (Ariz. 1977). In the insurance context, however, Arizona courts have permitted joint venture liability to be submitted to juries despite the absence of proof of profit and loss sharing or joint right to control. *See Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1138 (Ariz. 1982) ("A joint venture requires an agreement, a common purpose, a community of interest, and an equal right to control."); *Farr*, 699 P.2d at 386 ("[W]e note that here there was no proof of profit and loss sharing and no proof of a joint right to control. Thus, the classical elements of a joint venture are missing. But if that is true here, it was also true in *Sparks*."); *Ingram*, 112 F. Supp. 3d at 941 (noting that joint venture liability may attach notwithstanding absence of profit and loss sharing or joint control).

CCS argues, first, that joint venture liability cannot apply to it because CCS and

Country Life "are part of the same corporate family," and therefore an actual corporate designation already exists. Notably, however, CCS has stressed its separateness from Country Life throughout its motion. For example, CCS highlights the fact that the servicing agreement denies the creation of "any partnership, joint venture, employment, principal-agent or other relationship" between CCS and the other COUNTRY Financial affiliates. Further, it does not appear that CCS and Country Life are subsidiaries of the same parent corporation. Although both share the COUNTRY Financial tradename, it is undisputed that COUTNRY Financial is a tradename only, and not an existing corporate entity. Given these facts, the Court is not persuaded that the existing affiliation between CCS and Country Life renders joint venture liability inapplicable.

Next, CCS contends that joint venture liability cannot attach because McClure has not produced evidence that the two entities share in profits and losses or enjoy equal rights of control. As previously explained, however, Arizona courts have permitted joint venture liability in the insurance context notwithstanding the absence of proof on these two elements. *See Farr*, 699 P.2d at 386.

The Court also disagrees that McClure has offered no evidence of joint right of control. Under Arizona law, "equal right to control" does not mean that each venturer has "an equivalent amount of control over the venture's operation[.]" *Estate of Hernandez*, 930 P.2d at 1313. Rather, "each joint venturer must share, to some extent, in the control of the venture. In other words, it is sufficient that a venturer has some voice or right to be heard in the control and management of the venture." *Id.* At the very least, there are disputed questions of fact on this issue. For example, James Anderson, CCS's Rule 30(b)(6) witness, testified that CCS is responsible for payroll and benefits, but Country Life ultimately controls the day-to-day actions of those employees assigned to it. He could not, however, identify any managerial or supervisory employees at Country Life that are not also CCS employees. Moreover, the laundry list of services that CCS agreed to provide to Country Life includes management and policy administration. McClure also provided numerous training materials that apparently apply to all

COUNTRY Financial affiliates.  Considering COUTNRY Financial is merely a tradename, a jury reasonably could conclude that one or more of the affiliated companies operating under the shared tradename drafted these universal training materials.  Further, given the extensive operational services CCS agreed to provide COUNTRY Financial affiliates, a jury reasonably could infer that it played some part in drafting the materials that govern the conduct of all affiliates.

For these reasons, CCS has not shown that joint venture liability is inapplicable as a matter of law.  Because a reasonable jury could conclude that CCS and Country Life were engaged in a joint venture, summary judgment in favor of CCS is not appropriate.

### C.  Direct Involvement

Though not necessary to the disposition of the present motion, the Court also finds that a jury reasonably could find CCS liable for bad faith based on its direct involvement in the handling of McClure's claim.  Although CCS employees, as agents for Country Life, were directly involved in the handling of McClure's claim, CCS argues there is no evidence that CCS itself had such involvement.  This argument is unpersuasive.  "Where a joint venture exists, each of the parties is the agent of the others and each is likewise a principal so that the act of one is the act of all."  *Sparks*, 647 P.2d at 1138.  Thus, to the extent CCS and Country Life may be deemed joint venturers, a jury reasonably could find that the actions of CCS employees are attributable to both entities.

For these reasons,

**IT IS ORDERED** that CCS's Motion for Summary Judgment (Doc. 201) is **DENIED**.

Dated this 1st day of August, 2017.

*/s/ Douglas L. Rayes*
Douglas L. Rayes
United States District Judge