**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Benjamin McClure, | No. CV-15-02597-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Country Life Insurance Company, et al., | |
| Defendants. | |

At issue is Plaintiff Benjamin McClure's motion for partial summary judgment, which is fully briefed. (Docs. 205, 235, 263.) For the following reasons, the motion is denied.[1]

**I. Background**

McClure purchased a disability insurance policy ("Policy") from Defendant Country Life Insurance Company ("Country Life") in 1995. The Policy provides a monthly base benefit of $800 in the event McClure becomes disabled. McClure also purchased a supplemental Social Insurance Rider ("SIR"), which provides up to $700 per month in additional benefits subject to certain offsets, including payments received for Social Security Disability Insurance ("SSDI") benefits. Specifically, the SIR provides, in relevant part:

---

[1] The parties' requests for oral argument are denied because the issues are adequately briefed and oral argument will not assist the Court in resolving the pending motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

> This rider pays monthly benefits when the policy pays monthly benefits. An adjustment may be made for cost of living. The amount of the rider monthly benefit is the maximum monthly benefit of the rider less benefits from social insurance. Social insurance means:
>
> A. United States Social Security Disability Insurance . . .;
>
> . . .
>
> When you are eligible for benefits from social insurance, you must apply. This includes reapplication, rehearing or appeal as necessary. You must provide us proof of your application and the results.

McClure submitted a claim for disability benefits in January 2013 after sustaining a disabling head injury in November 2012. Country Life initially approved the claim and paid monthly base and SIR benefits from November 2012 until April 2014, when it terminated his claim. McClure brought this action against Country Life in December 2015, alleging that it breached the parties' insurance contract and administered his claim in bad faith.

In May 2016, during the pendency of this litigation, McClure was awarded SSDI benefits retroactive to December 2012. Later, in November 2016, Country Life concluded that McClure's claim was compensable as of June 2014. Country Life has paid McClure base benefits retroactive to that date through the present, but has not paid SIR benefits, retroactive or otherwise, because McClure now is receiving SSDI benefits that offset the SIR benefit entirely. McClure moves the Court to find, as a matter of law, that Country Life is in breach of the insurance contract and owes him SIR benefits, both for the retroactive period and going forward.

**II. Legal Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Facts are material if they might affect the outcome of the case under governing law, and a dispute over those facts is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III. Discussion**

McClure argues that Country Life owes him SIR benefits as a matter of law for four reasons: (1) the SIR does not include a reimbursement provision that permits Country Life to recoup SIR overpayments when SSDI benefits are awarded retroactively; (2) to the extent Country Life has a right to reimbursement, it has waived it by not seeking reimbursement for overpayments between December 2012 and April 2014; (3) allowing multiple insurers to offset disability benefits based on the same SSDI benefit violates public policy; and (4) applying the offset provision under the circumstances of this case runs counter to McClure's reasonable expectations. The Court addresses each in turn.

**A. Lack of a Reimbursement Provision**

The SIR does not contain a reimbursement provision, but McClure's argument on this point is misplaced because Country Life has not sought reimbursement for past overpayments. Rather, Country Life has offset McClure's monthly SIR benefit at the time of payment by the amount of his monthly SSDI benefit, a practice expressly permitted by the SIR.

The SIR states that it pays monthly benefits when the Policy pays monthly base benefits, and that the amount of the SIR benefit "is the maximum monthly benefit of the rider less benefits from social insurance," including SSDI. From December 2012 to April 2014, Country Life paid base benefits. Country Life also paid the maximum SIR benefit because McClure was not receiving SSDI benefits during this time. Country Life terminated base benefits in April 2014 and, as a result, ceased making SIR payments. In May 2016, McClure was awarded SSDI benefits retroactive to December 2012. Later, in

November 2016, Country Life determined that McClure's claim was compensable and began paying base benefits retroactive to June 2014. At the time these base benefits were paid, however, McClure had received SSDI benefits for that retroactive period. Accordingly, at the time of payment Country Life offset the retroactive SIR benefit by the retroactive SSDI benefit, reducing it to zero.

Though he argues the converse, it is McClure who is seeking to rewrite the insurance contract. McClure argues that his retroactive SIR benefits should not be offset by his retroactive SSDI benefits because, had Country Life not terminated his base benefits in April 2014, he would have continued to receive both base and SIR benefits until May 2016, when he was awarded SSDI benefits. Stated differently, had Country Life not terminated his base benefits in April 2014, it would have continued to overpay his SIR benefit until May 2016 and, because the SIR contains no reimbursement provision, Country Life would have been unable to recoup the past overpayments. The SIR expressly states, however, that the SIR benefit is paid whenever the Policy pays base benefits. It does not state that the SIR benefit is paid whenever Policy base benefits *should have been paid*. Because Country Life resumed paying base benefits in November 2016, whether the corresponding SIR benefits are subject to an SSDI offset is determined based on conditions known as of that date.

For these reasons, McClure's reliance on *Bush v. Metropolitan Life Insurance Co.*, 656 F.2d 231 (6th Cir. 1981), is misplaced. *Bush* involved a disability insurance policy that contained both an offset and a reimbursement provision. Metropolitan Life Insurance ("Metro") agreed to pay the insured, Bush, a monthly disability benefit, which would be reduced by any monthly SSDI benefits to which she is entitled. *Id.* at 232. In addition, the policy provided:

> If it is determined that any benefits paid . . . should not have been paid or should have been paid in a lesser amount, [Metro] shall be entitled to a refund of the amount of the overpayment. If the [Bush] fails to repay such amount . . . , [Metro] may recover the amount of the overpayment by making an appropriate deduction or deductions from any future benefit payment or payments payable to [Bush.]

*Id.* Bush sustained a personal injury in January 1974. Metro began paying Bush monthly disability benefits in January 1975, by which time she was totally disabled. *Id.* at 231-32.

In December 1975, however, Bush was awarded SSDI benefits retroactive to January 1974. *Id.* at 232. Beginning February 1976, Metro began reducing Bush's monthly disability benefits by the amount she received in SSDI (notably, Bush did not challenge this offset). *Id.* Metro also notified Bush that it had overpaid disability benefits from January 1975 to January 1976 in the amount of the retroactive SSDI award for that period. *Id.* When Bush failed to refund the overpayments, Metro began reducing her prospective disability payments to recoup to previously overpaid amounts. *Id.* Bush responded with a lawsuit alleging that Metro breached the insurance contract by withholding from her ongoing disability benefits an amount equal to the SSDI benefits that were retroactively granted in order to recoup overpayments previously made. *Id.*

The Sixth Circuit Court of Appeals found that the reimbursement provision relating to benefits that "should not have been paid or should have been in a lesser amount" was ambiguous. One plausible reading, advanced by Metro, was that this language included both "situations in which benefits are mistakenly paid according to conditions as understood by the parties at the time, but also situations in which later developments render the earlier payments incorrect." *Id.* at 232-33. Under this interpretation, Metro's withholdings would be consistent with the contract because later developments rendered the earlier payments incorrect. Another plausible reading, however, was "that recoupment is permitted only when the insurance company erroneously overpays according to conditions manifest at the time of payment." *Id.* at 233. Under this interpretation, Bush would prevail because she was not receiving SSDI benefits at the time Metro overpaid her.

Noting that Metro drafted the agreement, and following the traditional rule that "ambiguities are construed against the drafter," the court construed the reimbursement provision in Bush's favor and found that it was limited only to situations in which benefits are mistakenly paid according to conditions known to the parties at the time of

payment. *Id.* at 233-34. Because Bush was not receiving SSDI payments during the overpayment period, the court concluded that Metro had breached the insurance contract by recouping those overpayments from Bush's ongoing disability benefits. *Id.*

*Bush* is inapposite to McClure's case. Unlike Metro, Country Life has not sought reimbursement for overpayments previously made. Indeed, it is undisputed that Country Life did not pay SIR benefits between April 2014 and November 2016. Instead, Country Life offset retroactive SIR benefits at the time they were to be paid by McClure's retroactive SSDI benefits for that same period. Had Country Life withheld additional amounts to recoup the SIR benefits paid between from December 2012 to April 2014, McClure's reliance on *Bush* might be on point. But because Country Life has never sought to recoup past overpayments, *Bush* does not speak to the circumstances at issue.

McClure's reliance on *Lessard v. Metropolitan Life Insurance Co.*, 568 A.2d 491 (Me. 1989), likewise is misplaced. Like *Bush*, *Lessard* involved an insurer who sought to recoup past overpayments after the insureds were awarded retroactive SSDI benefits. "If a participant did not or could not reimburse the overpayment on request . . . Metropolitan would withhold current Plan benefits owed to the disabled participant and apply this amount to the outstanding overpayment balance." *Id.* at 494. As already noted, however, Country Life has not withheld SIR benefits to compensate for overpayments previously made. It merely offset retroactive SIR benefits at the time they were to be paid by McClure's SSDI benefits for that same period. The Court finds that Country Life's application of the offset provision is consistent with the express terms of the SIR.

**B. Waiver**

McClure's waiver argument likewise is premised on the fundamental misconception that Country Life is seeking reimbursement for past overpayments rather than offsetting SIR benefits at the time of payment. Under Arizona law, "[w]hen an insurer has knowledge of facts allegedly justifying a denial of coverage . . . , an unequivocal act . . . wholly inconsistent with a prior denial of coverage constitutes a waiver thereof." *McCollum v. Cont'l Cas. Co.*, 728 P.2d 1242, 1245 (Ariz. Ct. App.

1986). McClure argues that Country Life engaged in prior conduct wholly inconsistent with a right to reimbursement by failing to seek reimbursement for SIR overpayments between December 2012 and April 2014. To reiterate, however, Country Life has not withheld and is not currently withholding SIR benefits to recoup overpayments previously made to McClure. Country Life, therefore, is not seeking reimbursement.

In fact, Country Life's treatment of the SIR overpayments from December 2012 through April 2014 is consistent with its asserted right to offset SIR benefits at the time of payment. Because McClure had not yet been awarded SSDI benefits at the time Country Life paid the December 2012 through April 2014 SIR benefits, there was nothing to offset. Country Life then stopped paying benefits, and by the time Country Life resumed paying SIR benefits, including retroactive benefits for the period of June 2014 through November 2016, McClure had received SSDI benefits for this period. Consistent with the SIR, Country Life offset benefits according to the circumstances as they existed at the time of payment. Country Life has not engaged in conduct inconsistent with its right to offset SIR benefits by SSDI benefits. The Court therefore finds no waiver.

### C. Public Policy

In addition to his Country Life policies, McClure has a group disability insurance policy through his prior employer, issued by Aetna Insurance Company ("Aetna"). The Aetna policy does not include a SIR, but it requires the insured to apply for SSDI as a precondition to receiving monthly disability benefits and to reimburse Aetna for overpayments from any retroactive SSDI award.

Unlike Country Life, Aetna has paid McClure's claim continuously since November 2012. Accordingly, by the time McClure was awarded SSDI benefits retroactive to December 2012, Aetna had been paying monthly disability benefits for several years. McClure therefore was required to use his retroactive lump sum SSDI payment, totaling $122,522.80, to reimburse Aetna for the overpayments it made during that period. Aetna continues to pay McClure's monthly benefit, but those ongoing

benefits are now offset by the amount of his SSDI benefit.

McClure argues that only one insurer should be able to offset disability benefits because he has received only one SSDI award. Because Aetna has already collected McClure's retroactive SSDI benefits as reimbursement for past overpayments and continues to offset ongoing disability benefits, McClure contends that Country Life cannot enforce the SIR's offset provision. The Court disagrees.

In *1800 Ocotillo, LLC v. WLB Group, Inc.*, the Arizona Supreme Court discussed the circumstances under which contract provisions may be deemed unenforceable for violating public policy:

> Contract provisions are unenforceable if they violate legislation or other identifiable public policy. "Legislation" as used here includes not only statutes but also constitutions, ordinances, and applicable regulations. In determining whether a provision is unenforceable, courts balance the interest in enforcing the provision against the public policy interest that opposes enforcement. Analysis of the weight of the public policy interest generally focuses on the extent to which enforcement of the term would be injurious to the public welfare.
>
> Courts, however, are hesitant to declare contractual provisions invalid on public policy grounds. Our law generally presumes, especially in commercial contexts, that private parties are best able to determine if particular contractual terms serve their interests. Society also broadly benefits from the prospect that bargains struck between competent parties will be enforced. Accordingly, absent legislation specifying that a contractual term is unenforceable, courts should rely on public policy to displace the private ordering of relationships only when the term is contrary to an otherwise identifiable public policy that clearly outweighs any interests in the term's enforcement.

196 P.3d 222, 224 (Ariz. 2008) (internal quotations and citations omitted). Notably, McClure cites no legislation or other authority suggesting that, as a matter of clearly identifiable public policy, an insurer cannot enforce an express offset provision simply because a separate insurer has enforced a similar provision in a separate contract. Nor is it clear to the Court that Country Life's offset provision violates public policy but Aetna's does not, simply because Aetna enforced its rights first. The Court therefore declines to find that the SIR's offset provision unenforceable as a matter of public policy.

- 8 -

### D. Reasonable Expectations

Lastly, McClure argues that the offset provision should not be enforced under the present circumstances because enforcement of the provision would run counter to his reasonable expectations when he entered into the insurance agreement. In the insurance context, courts have recognized a principle, known as the reasonable expectations doctrine, under which "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those provisions." *Gregorio v. GEICO Gen. Ins. Co.*, 815 F. Supp. 2d 1097, 1101 (D. Ariz. 2011) (internal quotation and citation omitted). The reasonable expectations doctrine embodies a number of individual, yet related, concepts. *Id.* For example, the doctrine "embodies the proposition that policy language will be construed as a layman would understand it and not according to the interpretation of sophisticated underwriters." *Id.* Further,

> [a]n important corollary of the expectations principle is that insurers ought not to be allowed to use qualifications and exceptions from coverage that are inconsistent with the reasonable expectations of a policyholder having an ordinary degree of familiarity with the type of coverage involved. This ought not to be allowed even though the insurer's form is very explicit and unambiguous, because insurers know that ordinarily policyholders will not in fact read their policies.

*Id.*

Arizona has adopted an expansive formulation of the reasonable expectations doctrine. *Id.* at 1105. Arizona courts will not enforce terms,

> 1. Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable expectations of the average insured;
>
> 2. Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage;
>
> 3. Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured;

> 4. Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy.

*Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277, 283-84 (Ariz. 1987) (internal citations omitted). Stated differently,

> [t]he doctrine can be applied to unambiguous contracts. Moreover, an expectation of coverage that conflicts with terms in the policy that negate coverage included elsewhere in the contract can be created by an insurer's actions. In turn, the doctrine allows individuals to obtain more comprehensive insurance coverage than was originally bargained for.

*Gregorio*, 815 F. Supp. 2d at 1105. The doctrine cannot be used, however, "to add language to a policy to grant coverage not otherwise provided for." *Id.* at 1106. That is, "a court can subtract terms from a policy," but cannot add new ones. *Id.* at 1105-06.

Here, the offset provision is not ambiguous, nor is it written in a manner incomprehensible to a reasonable consumer. Moreover, McClure has offered no evidence that Country Life engaged in some activity that created an objective impression of coverage in McClure's mind, or that induced him to reasonably believe that he had coverage. Instead, the Court understands McClure to be arguing that enforcement of the offset provision under the circumstances of this case would emasculate the benefit he reasonably expected to receive. On this point, the Court concludes that summary judgment is inappropriate for two reasons: McClure has offered no evidence that he did not receive full and adequate notice of the term in question, and reasonable minds could differ on whether McClure's expectations were reasonable.

On one hand, Country Life persuasively argues that "SIRs provide an equivalent to social insurance benefits during the time it takes an insured to secure social insurance benefits, like SSDI." That is, "SIRs fill a gap. [They] are not generally intended to be a permanent benefit, although if an insured does not receive other social insurance benefits, they may be." Here, because McClure has received SSDI benefits, there is no gap for the SIR to fill. A reasonable jury therefore could conclude that enforcement of the offset

provision has not emasculated apparent coverage or produced an unexpected result.

On the other hand, McClure notes that the SIR did not serve its gap-filling function because Country Life terminated his benefits in April 2014 and did not resume payments until after McClure had been awarded SSDI. Stated differently, had Country Life not terminated benefits in April 2014, the SIR would have filled the gap in benefits until May 2016. Instead, McClure was left without his gap-filler. At least with respect to Country Life's application of the offset provision to McClure's retroactive SIR benefits, a reasonable jury could conclude that McClure has not received the gap-filling benefit he bargained for. This is especially true considering that McClure has accused Country Life of terminating his benefits in April 2014 in bad faith. Permitting Country Life to strictly enforce the offset provision to his retroactive benefits arguably would allow Country Life to benefit from its alleged bad faith conduct. For these reasons, the Court finds that summary judgment is inappropriate because reasonable minds could disagree as to whether enforcement of the SIR offset provision violates the reasonable expectations doctrine under the circumstances of this case.

**IT IS ORDERED** that McClure's Motion for Summary Judgment (Doc. 205) is **DENIED**.

Dated this 7th day of August, 2017.

Douglas L. Rayes
United States District Judge